UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| MILLER MANUFACTURING COMPANY, | ) ) ) ) | Court File No. To Be Assigned |
| Plaintiff, | ) ) | **COMPLAINT** |
| v. | ) ) ) | Jury Trial Demanded |
| TRACTOR SUPPLY COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

**NATURE OF THE ACTION**

This is an action for trademark infringement, patent infringement, and related claims arising from Defendant Tractor Supply Company's ("TSC" or "Defendant") intentional and unlawful use of intellectual property owned by Plaintiff Miller Manufacturing Company ("Miller" or "Plaintiff"), for example, on Defendant's website and at Defendant's retail store locations, including those throughout Minnesota. Through its conduct, TSC is creating substantial consumer confusion as to the source of the products at issue in this lawsuit. Miller seeks an order of injunction and an award of its attorneys' fees, costs, and money damages.

**THE PARTIES**

1.      Miller is a Minnesota corporation having its principal place of business located at 2915 Commers Drive, Suite 100, Eagan, Minnesota 55121. Miller is a manufacturer and international distributor of farm, ranch, and pet products. Its products are sold through distributors that serve retailers of farm and ranch products in the United States, Canada, and numerous countries around the world.

174534327v17

2.      TSC is a Delaware corporation having its principal place of business at 5401 Virginia Way, Brentwood, TN 37027. TSC is a retailer of farm, ranch, and pet products in the United States.

## JURISDICTION AND VENUE

3.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367. This action arises, in part, from TSC's transaction of business and commission of tortious acts in Minnesota.

4.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendant has several retail locations in Minnesota, including in this District, which are regular and established places of business. A substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

5.      Miller is a decades-old Frandsen Corporation company with a strong manufacturing presence in Minnesota. For over 80 years, Miller has been a leading designer, manufacturer, and marketer of supplies for farm, ranch, and pet use, which are sold under the brand names of Little Giant®, Hot-Shot®, Springer Magrath®, Double-Tuf®, Pet Lodge®, and API®. Miller owns more than 100 patents, trademarks, and copyrights with the United States Patent and Trademark Office and United States Copyright Office. Miller's growth has added hundreds of U.S.-based jobs.

6.      The parties are in significantly close commercial proximity. They have a decades-long relationship, with Miller being a manufacturer and TSC being a retailer of pet and farm supplies products. The parties use similar e-commerce platforms to advertise and sell substantially

174534327v17

similar goods and services in substantially the same manner to the same market of consumers. For the products at issue in this lawsuit, Miller and TSC are competitors.

7.    At all times relevant to this action, TSC, and all others acting in concert with TSC, have engaged in unauthorized use and infringement of Miller's intellectual property. TSC's activities described herein amount to patent infringement, federal trademark infringement, false advertising, false designation of origin, federal unfair competition, violation of common law rights, deceptive trade practice, and other intellectual property infringement related claims.

<u>MILLER'S REGISTERED AND COMMON LAW TRADEMARKS</u>

8.    In 1961, the TROUGH-O-MATIC® trademark originated with Miller. Today Miller is the owner of the valid and subsisting United States Trademark Registration No. 4221863 on the Principal Register in the United States Patent and Trademark Office for TROUGH-O-MATIC® for "automatic float valves, made of plastic and metal, for stock tanks, troughs, barrels and pans" in IC009, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Miller has used the TROUGH-O-MATIC® mark in commerce continuously since at least 1961 in connection with the manufacture, distribution, offering for sale, sale, marketing, advertising, and/or promotion of automatic float valves.

9.    Miller is also the owner of the valid and subsisting United States Trademark Registration Nos. 4245004, 4245005, 4245009, 4245011, 4263630, 4737534, 6664990, 6664993, 6664994, 6842291, 6842292, 4737535, 6014601, 1016311, 5957209, 5957208, 2204745, and 0540098 on the Principal Register in the United States Patent and Trademark Office for LITTLE GIANT® and related designs for various pet and farm supplies, including float valves, many of which have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C.

3

§ 1065. Miller's ownership and continuous use of nearly 20 federally registered marks for LITTLE GIANT® is evidence of the strength of the mark and brand recognition by the consuming public.

10.    Miller sells float valve products under the TROUGH-O-MATIC® and LITTLE GIANT® mark nationwide, for example, as shown below:



11.    Additionally, for more than three decades and continuing through today, Miller has used the CHOW HOUND trademark in connection with automatic dog feeders, which are offered for sale on Miller's website and through its catalog. An example is show below:



12.      Miller is the owner of the United States Trademark Serial No. 99311418 for CHOW HOUND for feeders, such as the automatic dog feeder shown immediately above.

13.      Additionally, for over two decades, and continuing through today, Miller has used the PET LODGE® mark in connection with portable kennels and related products.

14.      Miller is the owner of the valid and subsisting United States Trademark Registration No. 2815500 on the Principal Register in the United States Patent and Trademark Office for PET LODGE® for "portable kennels" in IC020, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Miller sells portable kennels (e.g., wire dog crates) under the PET LODGE® mark nationwide, for example, as shown below:



15.      Miller is also the owner of the valid and subsisting United States Trademark Registration No. 5574232 on the Principal Register in the United States Patent and Trademark Office for PET LODGE® for "automated pet appliances, namely, feeders and waterers" in IC007, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Miller sells automated water bowls under the PET LODGE® mark nationwide, for example, as shown below:

174534327v17



16.    As a result of its widespread, continuous, and exclusive use of each of the TROUGH-O-MATIC®, LITTLE GIANT®, CHOW HOUND, and PET LODGE® marks (collectively, "Miller's Marks") to identify its corresponding products, Miller owns valid and subsisting federal statutory and common law rights in its marks.

17.    Miller's Marks are distinctive to the consuming public, which is due, in part, to the time, money, and resources Miller has spent researching, developing, marketing, advertising, and promoting its products sold under the Miller Marks. As a result of Miller's expenditures and efforts, Miller's Marks have come to signify the high quality of the products designated by Miller's Marks, and Miller's Marks have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Miller.

## TSC'S INFRINGEMENT OF MILLER'S TRADEMARKS

18.    TSC has engaged in a series of intentional acts of infringement that violate Miller's rights. The acts amount to blatant intellectual property theft and unfair business practices.

174534327v17

19.    For example, at least as early as July 17, 2025, TSC began advertising and selling the "AgraTronix Plastic Trough-O-Matic Float Valve," on its website, as shown below:



20.    In its efforts to sell a float-valve product that competes directly with Miller's, TSC is using Miller's TROUGH-O-MATIC® and LITTLE GIANT® trademarks. TSC is trading off Miller's brand, product development work, reputation and goodwill, and is intentionally creating confusion as to the source of the products at issue to divert sales. Miller's reputation is harmed by this confusion, as are its sales. A side-by-side view of Miller's product offering and TSC's product offering is shown below:



21.    As demonstrated above and on its website, TSC has copied Miller's images of Miller's float valve product and is using those images to sell a competing, non-Miller product. A

7

sample purchase was conducted to confirm that TSC provides consumers with a non-Miller product when those consumers purchase the float valve product from TSC's website shown above.

22.    In connection with the non-Miller float valve, TSC's website includes a Product Details section, a Products Documents section, and a Specifications section. In each section, TSC refers to the non-Miller product as if it is in fact Miller's product. For example, the Product Details section states:

> AgraTronix Trough-O-Matic Float Valves automatically control the water level for most plastic and metal stock tanks, troughs, barrels, and pans. . . . Miller Manufacturing Company products are warranted to the original purchaser to be free from defects in material and workmanship under normal use and service. Miller's obligations under this Warranty shall be limited to the repair or exchange of any part or parts which may thus prove defective under normal use and service within 30 days from the date of shipment by Miller to the original purchase, and which Miller's examination shall disclose to its satisfaction to be thus defective. Purchaser must deliver any part or parts to: Miller Manufacturing Company, 1450 West 13th Street, Glencoe, MN 55336 for examination. This Warranty does not apply to damage caused by misuse or neglect in the field, or failure to follow installation instructions.

23.    From the language above, TSC has created the perception for consumers that Miller is providing a warranty for the non-Miller products sold by TSC. Among other issues, this language creates significant confusion as to the source of the non-Miller float valve sold by TSC.

24.    In connection with the non-Miller float valve, TSC's Product Documents section includes a "Little Giant" product manual, yet Little Giant® is a Miller brand and registered trademark. In connection with the non-Miller float valve, TSC's Specification section states, "Compatibility: Little Giant parts only." These are blatant acts of intellectual property infringement and unfair trade practices, creating confusion as to the source of TSC's non-Miller product. This amounts to egregious and exceptional wrongful conduct.

25.    TSC's infringing acts as alleged herein have resulted in actual confusion. For example, at least one customer reported purchasing an automatic float valve on TSC's website,

believing it to be a Miller (e.g., LITTLE GIANT®) product. Yet, the product the customer received from TSC was in fact a non-Miller product. The customer reported that they were confused by TSC's conduct and unhappy to receive the non-Miller product. Upon information and belief, this is but one example of many evidencing the actual confusion resulting from TSC's infringing conduct.

26.    Miller reported the instance of actual confusion described in the Paragraph immediately above to TSC on November 13, 2024. However, TSC's infringing conduct has continued despite Miller's notice to TSC, which further demonstrates the intentionality and willfulness of TSC's infringing conduct.

27.    TSC posts and maintains consumer reviews on its website, which further create and demonstrate actual confusion between Miller's float valve and the non-Miller float valve sold by TSC in connection with Miller's TROUGH-O-MATIC® and LITTLE GIANT® trademarks.

28.    The instances of actual confusion demonstrated by the consumer reviews include those at the point of sale as well as during and/or after use of the non-Miller product.

29.    The consumer reviews also demonstrate a public perception that the non-Miller float valve is of a lesser quality than the Miller float valve, which is evidence that Miller's reputation is being irreparably harmed by TSC's infringing conduct and the resulting consumer confusion.

30.    Exemplary consumer reviews posted and maintained by TSC are shown below:



Leroy

★☆☆☆☆
**Do Not Buy AgraTronix Brand**

3 months ago

AgraTronix is not the Little Giant brand pictured. The AgraTronix float has a terrible design with a rubber washer that is too stiff to seal off the water flow with the slightest water pressure. The water outlet hole is also oversized. With the float rising at angle the washer can not seal. Again the seal is the wrong type of material. Waste of time and money. Do Not Buy.

9

rrrr

★☆☆☆☆
**They don't work**

9 months ago

The valve doesn't seat allowing water to drain past and tanks to overfill. I bought two - they both do the same things. I've run a hundred of these little giants - these are the first two to not work. I don't think they are little giants, is the problem, even though that's what the website calls them. That name is not on the device or the box.

**Sweepstakes** Yes

⊗ No, I do not recommend this product.

joe28

★☆☆☆☆
**Trash**

a month ago

I purchased one it did not shut off when tank was full went back got another one same thing. i bought the same one in two years ago and it still works fine they have changed something they are trash now

1234

texas

★☆☆☆☆
**poor quality.**

19 days ago

I have used theses for years with no issues. Recently had to replace an old one but this one would not shut off. Took it back for an exchange, same issue. The entire product is under the water and water still flowing. Decided to look at reviews and found way too many with the same issue. I super glued a chunk of pool noodle to the bottom and that has fixed it for now. TSC when my pool noodle fix fails I will not buy another of these from you unless you have the issue fixed. Waste of time to keep trying.

⊗ No, I do not recommend this product.

JustRena

★☆☆☆☆
**TRASH**

3 months ago

I have used water trough floats for years. They took a great product and ruined it. It will not turn off the water.

MB Ranch

Ca

★☆☆☆☆
**Very high fail rate**

a month ago

The water here is very corrosive so plastic is the only option. Unfortunately, these are not your little giant plastic waters. I have many tanks throughout the ranch and these constantly fail. Of the new ones close to a half fell out of the box. They just leak it. It's just a simple little float, but it appears the float is not big enough to put enough pressure on the very thin floppy seal. These truly are horrible. The last thing I need to do is be worrying about brand new water floats.

⊗ No, I do not recommend this product.

Jsers

★☆☆☆☆
**Waste of money and water**

5 months ago

Looks like the Little Giant one they used to sell which worked really well. This however is incredibly poor quality. Will slow down but not shut off completely. Good way to waste water

10

Xdred

Frankston, texas

★☆☆☆☆

**Does not work, doesn't stop water**

3 days ago

This float does not work. Will not stop water when level is reached. TSC changed brand and is not quality of the little giant floats. Bought 3 tried 2 and now returning all 3.

✖ No, I do not recommend this product.

AHManvelTX

MANVEL, Tx

★☆☆☆☆

**Terrible quality**

28 days ago

This brand item is junk. I have been through 2 of them in the last 3 weeks. I typically use Little Giant from my local feed store. Needed a knew one as it's 5 years old and starting to leak by. Was at TS so got this. The AgraTronix leaked right away. I took it back, exchanged for a new one from a different Tractor Supply and this one leaked too. I'm done with this brand. Taking back for refund or store credit. Will get a Little Giant replacement.

✖ No, I do not recommend this product.

Leaks alot

Central FL

★☆☆☆☆

**Poor**

3 months ago

They leak, won't stop the water flow water tub just keeps overflowing!! The Little Giant brand which I've used for 9 yrs never did this.

✖ No, I do not recommend this product.

Kimberly

★☆☆☆☆

**Not the same quality as other brands!**

5 months ago

AWFUL. The ones I bought in the past from TSC were by Little Giant and they worked fine. This is the second one of these I've bought from AgraTronix and neither of them ever shut off the water completely. The flow does slow down, but no matter how far down into the water the float and valve assembly are sitting, the valve never completely closes off so there's always a small flow of water which overflows the tank. I followed the instructions to a T so I know I installed it correctly. There's just something off about the way they make the valve seat. I called AgraTronix and they offered to send me new ones, but I'm just going to get a refund from TSC because I don't trust that I won't have the same issue with the 3rd one I try.

✖ No, I do not recommend this product.



★☆☆☆☆

**The product doesn't work!**

Steve

5 months ago

This isn't like the older ones they did sale. This product is cheap, they will not work for you! Tractor Supply should take them back to the supplier.

✖ No, I do not recommend this product.

11



31.     Prior to selling the non-Miller automatic float valve shown above, TSC previously sold Miller's TROUGH-O-MATIC®, LITTLE GIANT® automatic float valve.

32.     Despite that TSC no longer sells Miller's TROUGH-O-MATIC®, LITTLE GIANT® float valve, TSC has maintained the consumer reviews pertaining to Miller's TROUGH-O-MATIC®, LITTLE GIANT® float valve on its website in connection with its advertisements and sales of the non-Miller float valves. These consumer reviews maintained by TSC, discussing Miller's product and/or confusing Miller's products with non-Miller products, demonstrate and create further confusion as to the source of the non-Miller product now sold by TSC and unfairly trade off the goodwill and reputation Miller has built in its TROUGH-O-MATIC®, LITTLE GIANT® brands and its float valves sold in connection therewith.

33.     Additionally, at least as early as July 28, 2025, TSC began advertising and selling a "Retriever 52-Cup Ever-Full Galvanized Steel Outdoor Pet Water Bowl" on its website. Examples are shown below:

12



34.    In its efforts to sell an automatic water bowl product that competes directly with Miller's, TSC is using Miller's PET LODGE® trademark. TSC is trading off of Miller's brand, product development work, reputation and goodwill, and is intentionally creating confusion as to the source of the products at issue to divert sales. Miller's reputation is harmed by this confusion, as are its sales. A side-by-side view of Miller's product offering and TSC's product offering is shown below:

174534327v17




35.     As demonstrated above, on its website, TSC has copied Miller's images of Miller's automatic water bowl product and is using those images to sell a competing, non-Miller product.

36.     Miller received a report from a customer, unhappy with the non-Miller product, apparently believing it to be a Miller product. The customer reported that they purchased the product advertised on TSC's website (shown above) but instead received the competing Retriever product shown below:



14

174534327v17

37.    The customer report described in the Paragraph above is an instances of actual confusion. Upon information and belief, this is one of many examples of actual confusion.

38.    TSC posts and maintains consumer reviews on its website, which further create and demonstrate actual confusion between Miller's automatic water bowl and the non-Miller automatic water bowl sold by TSC in connection with Miller's PET LODGE® trademark.

39.    An exemplary consumer review posted and maintained by TSC is shown below:



40.    In connection with the non-Miller automatic water bowl, TSC's website includes a Product Details section, a Products Documents section, and a Specifications section. In each section, TSC refers to the non-Miller product as if it is in fact Miller's product. For example, the Product Details section states:

> Miller Manufacturing Company products are warranted to the original purchaser to be free from defects in material and workmanship under normal use and service. Miller's obligations under this Warranty shall be limited to the repair or exchange of any part or parts which may thus prove defective under normal use and service within 30 days from the date of shipment by Miller to the original purchase, and which Miller's examination shall disclose to its satisfaction to be thus defective. Purchaser must deliver any part or parts to: Miller Manufacturing Company, 1450 West 13th Street, Glencoe, MN 55336 for examination. This Warranty does not

apply to damage caused by misuse or neglect in the field, or failure to follow installation instructions.

41.     From the language above, TSC has created the perception for consumers that Miller is providing a warranty for the non-Miller products sold by TSC. Among other issues, this language creates significant confusion as to the source of the non-Miller automatic water bowl sold by TSC.

42.     In connection with the non-Miller automatic water bowl, TSC's Product Documents section includes Miller's PET LODGE® product manual. In connection with the non-Miller automatic water bowl, TSC's Specification section states, Instructions & Precautions: See Instructions in Box or on-line at Miller-mfg.com." TSC's Specification also states, "Country of Origin: Made in USA," but upon information and belief, the product is manufactured in Thailand.

43.     These are blatant acts of intellectual property infringement, false advertising, and unfair trade practices, creating confusion as to the source of TSC's non-Miller product. This amounts to egregious and exceptional wrongful conduct.

44.     Additionally, at least as early as July 17, 2025, TSC began advertising and selling a "Retriever 25 lb. Chow Hound Automatic Galvanized Dog Feeder" and a "Retriever 50 lb. Chow Hound Automatic Galvanized Dog Feeder" on its website. An example is shown below:



174534327v17

45.     TSC is using Miller's CHOW HOUND trademark in connection with its advertisements and sales of automatic dog feeders that are nearly identical to Miller's. In this manner, TSC is trading off of Miller's brand, product development work, reputation and goodwill, and is intentionally and willfully creating confusion as to the source of the products at issue to divert sales. Again, Miller's reputation is harmed by this confusion, as are its sales. To illustrate, a side-by-side view is shown below:

 

46.     TSC's website includes product Specifications sections for the non-Miller "Retriever Chow Hound Automatic Galvanized Dog Feeder" products, which lists the "Manufacturer Brand" of the products as "Pet Lodge." However, Pet Lodge is not the manufacture of TSC's infringing wire dog crate product. In fact, there is no pet or farm product manufacturer called "Pet Lodge." Instead, PET LODGE® is Miller's trademark, which TSC is infringing. TSC's conduct described herein creates further confusion as to the source of the products at issue.

47.     TSC posts and maintains consumer reviews on its website in connection with its advertisements and sales of the non-Miller automatic dog feeder. These consumer reviews further create and demonstrate actual confusion between Miller's automatic dog feeder and the non-Miller automatic dog feeder sold by TSC in connection with Miller's CHOW HOUND and PET LODGE® trademarks.

17

48.    Exemplary consumer reviews posted and maintained by TSC are shown below:



Anonymous

 VERIFIED PRODUCT OWNER

Holton,Mi

★★★★★

**Chow hound dog food dispenser**

a year ago

This has made feeding my outdoor dog a breeze I just fill it about once a month and no critters get in with the magnatized door flap

✔ Yes, I recommend this product.

---

Tennessee Todd

 VERIFIED PRODUCT OWNER

★★★★★

**4 dogs and we love this feeder.**

a year ago

When it comes to having 4 dogs... you can't beat this Chow Hound Dog Feeder! So easy to fill up and the dogs love it. I highly recommend it, we (2 golden doodles and 2 sheep-a-doodles) love it!

---

terrystone

 VERIFIED PRODUCT OWNER

★★★★☆

**Pet Lodge Chow Hound Dog Feeder, 50 lb. Capacity**

a year ago

Very sturdy gravity feeder. Large breed dog food tends to get stuck in the narrow opening from the top bin to the feeding area. Switched to medium breed food and it works just fine.

✔ Yes, I recommend this product.

---

Shirly H

 VERIFIED PRODUCT OWNER

Helotes, Texas

★★★★★

**Chow Hound Works Great**

2 years ago

Works great, feeding out dog food as the dogs eat. Keeps food dry and protected from weather.

✔ Yes, I recommend this product.

---

Letsrodeo

 VERIFIED PRODUCT OWNER

Texas

★★★★★

**Pet lodge chow hound feeder**

2 years ago

Saves me time and effort and my dogs always have plenty of food.

✔ Yes, I recommend this product.

174534327v17

Anonymous

 VERIFIED PRODUCT OWNER

Greenville, GA

★★★★★

**Dog feeder: Pet Lodge Chow Hound**

2 years ago

Sturdy, made to last. Will stand up to time. Strong enough, dogs want chew it up and get hurt.

● Yes, I recommend this product.

Doberman mama

 VERIFIED PRODUCT OWNER

★★★★☆

**Pet Lodge Chow Hound**

2 years ago

We are really happy with the feeder although the dog food we use doesn't just fall down into the tray easily. Not sure if it's because of the type of food or a malfunction of this feeder, however it's not a deal breaker for us. Overall a great option that's mess and mostly hassle free.

● Yes, I recommend this product.

JLS1968

 VERIFIED PRODUCT OWNER

Lebanon Virginia

★★★★★

**My second Chow Hound**

3 years ago

Excellent product. Works as advertised. I purchased a second for my new puppy.

● Yes, I recommend this product.

Lm Branscomb

 VERIFIED PRODUCT OWNER

Northern Utah

★★★★★

**Pet Lodge Chow Hound auto feeder**

3 years ago

Love, love, love the convinence of this feeder. That fact the dogs can eat when they want. Especially love that the birds don't get into it.

Busterholly

 VERIFIED PRODUCT OWNER

Marianna, Fl

★★★★★

**Pet lodge chow hound dog feeder**

3 years ago

This dog feeder protects the food from the weather and ants.

**Sweepstakes** Yes

● Yes, I recommend this product.

Stephen Sheffield

 VERIFIED PRODUCT OWNER

Palestine Texas

★★★★★

**Pet Lodge Chow Hound Dog Feeder, 50 lb. Capacity**

3 years ago

It has been a great feeder for my dog, i have 3 french bulldog's and a lab and they eat just fine out of it!!!

**Sweepstakes** Yes

 Yes, I recommend this product.

Mnsal

 VERIFIED PRODUCT OWNER

Axis, AL

★★★☆☆

**Chow Hound feeder**

3 years ago

Nice construction - Metal is thin, but hope it last along time

**Sweepstakes** Yes

Cecu

 VERIFIED PRODUCT OWNER

El Paso, TX

★★★★★

**Pet Lodge Chow Hound**

3 years ago

I love it. Just feel it up and it's ready to go. Great for when you go out of town.

Cliffordjr

 VERIFIED PRODUCT OWNER

Dunlap tn

★★★★★

**Pet lodge chow hound feeder**

3 years ago

This is my second one very convenient to use just fill it up when it gets low keeps the dogs happy .

Wehunt

✅ VERIFIED PRODUCT OWNER

Alabama

★★★★★

**Chow Hound** Outdoor Dog Feeder

4 years ago

Excellent outdoor feeder. Keeps feed dry during rain.

✔ Yes, I recommend this product.

---

Bogs

✅ VERIFIED PRODUCT OWNER

★★★★★

**Best feeder out there**

6 years ago

This is a great product. I have used this thing for years. I am currently using one that is about 15 yrs old and still in great shape. Got a 2nd big dog so bought another **chow hound**. Best price here.

✔ Yes, I recommend this product.

---

Blackheart73

✅ VERIFIED PRODUCT OWNER

San Antonio, Texas

★★★★★

**Modification to the Chow Hound dog feeder**

6 years ago

The feeder is great with the exception of the top lid. It opens from the back and is difficult to pour dog food into. there are two recommendation that I want to make. 1st is to have the lid open from the front. 2nd is to have a locking slot to keep the lid open while pouring in the dog food.

**Sweepstakes** No

✔ Yes, I recommend this product.

---

**Sweepstakes** Yes

✔ Yes, I recommend this product.

---

My3jboyz

Tazewell, Virginia

Gender **Female**

Age **45 to 54**

★★★★★

**Very durable**

a year ago

[This review was collected as part of a promotion.] The **little Giant** Dry Food dispenser is made of great quality. Very durable and hold a lot of dog food and is easy for my dogs to use. Keeps the food dry and fresh. This was kept outside during a snowstorm and the food was dry. I highly recommend this feeder to anyone.

✔ Yes, I recommend this product.

Originally posted on Spreetail, LLC

Aperk0630

Pleasant city, Ohio

Gender **Female**

Age **35 to 44**

★★★★★
**Great for multiple dogs**

a year ago

[This review was collected as part of a promotion.] I absolutely love the  automatic steal dog food feeder it is so great for multiple dogs if you have. It holds up to 50lbs of dry dog food, its stainless steel supernice all the way around I would highly recommend.

✔ Yes, I recommend this product.

> Originally posted on Spreetail, LLC

---

D.B.

Boise, ID

Gender **Male**

Age **55 to 64**

★★★★★
 **Dry Food Food Feeder**

a year ago

[This review was collected as part of a promotion.] Its just the right size for dry dog food, like that I can mount the dog feeder to the wall. Also solid construction and galvanized steel to prevent rust. Very Nice !!!!

✔ Yes, I recommend this product.

> Originally posted on Spreetail, LLC

---

Ribbett

✔ VERIFIED PRODUCT OWNER

WNY

★★★☆☆
 **Cow Hound Dog Feeder 50 lb capacity**

a year ago

The dog food does not come down as easily as the smaller Dog food feeder. But this feeder will hold a LARGE bag of dog food and less times to refil. I guess giving it a little shake once and awhile would take care of this problem. One thing I have noticed with the smaller ones is that the interior will rust. I was considering sanding and painting the smaller one before using it again before it totally rusts through.

✔ Yes, I recommend this product.

heyyouitsme

✔ VERIFIED PRODUCT OWNER

Oregon

★★★★☆
**Needs Legs for Giant Breed Dogs**

2 years ago

This feeder is great, except that it isn't designed for giant breed dogs to easily eat out of it. I leave it propped open so they still have food available, but they don't like the weird position they have to twist into to get to the food. We're going to have to build a table to fit their height (they're 31" at the shoulder). I'll keep scooping food into a regular bowl in the mean time. The feeder has holes in the back to hang the feeder, but we're not going to damage the house siding this way. It would be great if **Pet Lodge** made adjustable legs for their feeders!

**Sweepstakes Entry** Yes

✔ Yes, I recommend this product.

23

174534327v17



49.     Prior to selling the non-Miller automatic dog feeder, TSC previously sold Miller's CHOW HOUND, PET LODGE® automatic dog feeder.

50.     Despite that TSC no longer sells Miller's CHOW HOUND, PET LODGE® automatic dog feeder, TSC has maintained the consumer reviews pertaining Miller's CHOW HOUND, PET LODGE® automatic dog feeder on its website in connection with its advertisements and sales of the non-Miller automatic dog feeders. These consumer reviews maintained by TSC, reviewing Miller's product or confusing Miller's product with non-Miller

products, demonstrate and create further confusion as to the source of the non-Miller product now sold by TSC and unfairly trade off the goodwill and reputation Miller has built in its CHOW HOUND and PET LODGE® brands and its automatic dog feeders sold in connection therewith.

51.    Additionally, at least as early as July 21, 2025, and likely much earlier, TSC began advertising and selling a "Retriever 6 ft. x 5 ft. x 10 ft. Lodge Expandable Welded Wire Dog Kennel" on its website. An example is shown below:



52.    As demonstrated above, TSC is using the term "Lodge" in connection with its advertising and sales of wire dog crate products in a manner that creates confusion with Miller's PET LODGE® mark used in connection with wire dog crates. TSC is trading off Miller's brand, product development work, reputation and goodwill, and is intentionally creating confusion as to the source of the products at issue to divert sales. Miller's reputation is harmed by this confusion, as are its sales.

174534327v17

53.     Regarding float valves, automatic water bowls, automatic dog feeders, and wire dog crates, TSC and Miller advertise and sell the products at issue through the same trade channels, which includes their respective websites, as shown above. The products at issue are advertised and sold in the same market, including directly to consumers of farm and pet supplies.

54.     TSC's infringement is willful and intentional. TSC has knowledge of Miller's Marks and branding. For example, as a long-time retailer of Miller's products, TSC has become familiar with and even sold Miller products bearing Miller's Marks, which are the same marks TSC is now using in connection with non-Miller products. In certain instances, TSC has ceased to sell Miller products but continues to uses Miller's intellectual property and branding to advertise and sell non-Miller products. These intentional act of infringement have caused confusion and deception in the marketplace and diverted potential sales of Miller's products to TSC.

55.     TSC's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Miller and to its valuable reputation and goodwill with the consuming public for which Miller has no adequate remedy at law.

<u>MILLER'S U.S. PAT. NO. D693,067 AND TSC'S INFRINGEMENT THEREOF</u>

56.     At the time of this filing, Miller's United States Design Patent No. D693067 (the "'067 Patent"), is also at issue and being infringed. The '067 Patent claims the ornamental design as shown and described in the patent.

57.     The '067 Patent, entitled WATERING DEVICE, was duly and legally issued on November 5, 2013, and names Gerald Scherbing and Todd Ulrich as the inventors. Miller is the assignee of the entire right, title, and interest in the '067 Patent.

58.     TSC has advertised and sold the "ImPECKables Starter Poultry Kit" on its website, which includes a poultry waterer ("ImPECKables Watering Device").

26

59.     Below are comparisons between exemplary figures of the '067 Patent and the ImPECKables Watering Device, which demonstrate infringement, for example, due to the identical and/or near identical appearance of the individual features and designs as a whole:



| Claimed Design of the '067 Patent | ImPECKables Watering Device |
| --- | --- |
| Miller's '067 Patent – front view | ImPECKables Watering Device – front view |
| Miller's '067 Patent – perspective view | ImPECKables Watering Device – perspective view |
| Miller's '067 Patent – side view | ImPECKables Watering Device – side view |
| Miller's '067 Patent – top view | ImPECKables Watering Device – top view |

60.     Recently, TSC began offering for sale a different version of the ImPECKables Watering Device with a reshaped trough, body portion, and top portion. Upon information and belief, TSC began selling the reshaped version of the ImPECKables Watering Device because it

27

was aware that the ImPECKables Watering Device infringes the '067 Patent. Before TSC began advertising and selling the reshaped version of the ImPECKables Watering Device, it had already gained a foothold in the market by selling the original version of the ImPECKables Watering Device, which infringes Miller's '067 Patent. Images and listings of the original ImPECKables Watering Device, appearing to be sold by TSC, remain online.

61.    Additionally, TSC now advertises and sells on its website and at its retail stores (including those throughout Minnesota) a poultry watering device, which it refers to as the Flock Party Poultry Waterer Fountain ("Flock Party Watering Device"). An example is shown below:



62.    Below are comparisons between an exemplary figure of the '067 Patent and the Flock Party Watering Device, which demonstrate infringement, for example, due to the identical and/or near identical appearance of the individual features and designs as a whole:

174534327v17



| Claimed Design of the '067 Patent | Flock Party Watering Device |
|---|---|
| Miller's '067 Patent – front view | Flock Party Watering Device – front view |
| Miller's '067 Patent – perspective view | Flock Party Watering Device – perspective view |
| Miller's '067 Patent – side view | Flock Party Watering Device – side view |
| Miller's '067 Patent – top view | Flock Party Watering Device – top view |

63.    As evidenced above, the designs of the ImPECKables Watering Device and the Flock Party Watering Device (collectively, the "TSC Watering Devices') are substantially the same as the patented design of the '067 Patent. The designs are so similar that an ordinary observer would be deceived by the substantial similarity between the designs so as to purchase the TSC Watering Devices believing them to be the design of the '067 Patent. For example, aspects of the

top portion (including the four tabs and the handle), the body, and the bottom portion of the TSC Watering Devices are the same or substantially the same as those claimed in the patented design of the '067 Patent, such that the overall appearance of the TSC Watering Devices is substantially the same as the design of the '067 Patent.

64.    TSC has known of the existence of the '067 Patent and Miller's beginner poultry kit and watering device associated with the '067 Patent prior to the infringement, for example, based on TSC's involvement in the farm supplies industry, TSC's interaction (as a retailer) with Miller's product covered by the '067 Patent, and the near identical nature of the TSC Watering Devices to the design of the '067 Patent and associated Miller beginner poultry kit. Moreover, TSC was on notice of Miller's '067 Patent no later than August 30, 2024, based on a notice letter sent on behalf of Miller to TSC.

65.    The TSC Watering Devices compete directly with Miller's watering device, causing sales and profits to be diverted from Miller to TSC as a result of TSC's infringing conduct.

<u>TSC'S FURTHER WRONGFUL CONDUCT INCLUDING FALSE ADVERTISING, DECEPTIVE BUSINESS PRACTICES, AND UNFAIR COMPETITION</u>

66.    Upon information and belief, TSC is selling additional non-Miller products, but advertising the products as if they are Miller products. This is an example of a bait-and-switch.

67.    For example, today TSC advertises and sells the "Little Giant Anti-Siphon Trough-O-Matic Float Valve" and the "Little Giant Metal Trough-O-Matic Float Valve," yet Miller ceased to supply these products to TSC as of January 2024. Examples from TSC's website are shown below:





68.     In connection with the "Little Giant Anti-Siphon Trough-O-Matic Float Valve" and the "Little Giant Metal Trough-O-Matic Float Valve" products advertised by TSC, TSC's website includes Product Details, Product Documents, and Specification sections, each of which include Miller's information (e.g., Miller's warrant, Miller product manual, LITTLE GIANT® branding).

69.     Based on the conduct in the Paragraphs immediately above, TSC is trading off Miller's brand, product development work, reputation and goodwill, and is intentionally creating

31

confusion as to the source of the products at issue to divert sales. Again, Miller's reputation is harmed by this confusion, as are its sales.

70.    Additionally, TSC has intentional copied several of Miller's product images (e.g., provided on Miller's website) in connection with TSC's advertisements and sales of non-Miller products, including poultry feeder products. TSC's copying of Miller images creates further confusion as to the source TSC's non-Miller products.

71.    Examples of the copied images are shown below. In each instance, TSC's URL includes the term LITTLE GIANT, which is Miller's longstanding trademark. TSC's conduct in this regard amounts to trademark infringement and unfair competition under the Lanham Act, as well as violations of Minnesota state law (e.g., unfair competition and deceptive trade practices). TSC's conduct furthers consumer confusion as to the source of the products at issue.

| 20 Inch Plastic Flip-Top Poultry Ground Feeder | ImPECKables 2.5 lb. Plastic Flip-Top Poultry Feeder |
|---|---|
|  | |
| https://miller-mfg.com/products/plastic-flip-top-poultry-ground-feeder | https://www.tractorsupply.com/tsc/product/little-giant-plastic-flip-top-poultry-feeder-2167094 |

| Little Giant® | Miller Manufacturing 1 Quart Plastic Feeder Base | ImPECKables Plastic Chicken Feeder Base, 1 qt |
|---|---|
|  |  |
| https://miller-mfg.com/products/1-quart-plastic-feeder-base?variant=45586254299438 | https://www.tractorsupply.com/tsc/product/little-giant-plastic-1-quart-feeder-base-2106331?cid |
| LITTLE GIANT® | MILLER MANUFACTURING 1 Quart Screw-On Poultry Jar | ImPECKables 1 qt. Screw-On Poultry Jar |
|  |  |
| https://miller-mfg.com/products/screw-on-poultry-jar | https://www.tractorsupply.com/tsc/product/little-giant-1-qt-screw-on-poultry-jar-1046929 |

174534327v17

| LITTLE GIANT® | MILLER MANUFACTURING 1 Quart Screw-On Poultry Waterer Base | ImPECKables 1 qt. Screw-On Poultry Waterer Base |
|---|---|
|  | |
| https://miller-mfg.com/products/1-quart-screw-on-poultry-waterer-base | https://www.tractorsupply.com/tsc/product/little-giant-1-quart-screw-on-poultry-waterer-base |

72.    In connection with the ImPECKables 2.5 lb. Plastic Flip-Top Poultry Feeder advertised and sold by TSC, TSC's website includes a Product Details section falsely and/or misleadingly claiming that the non-Miller product advertised and sold by TSC is a LITTLE GIANT® product that is subject to Miller's warranty. The Product Details section is stated below:

> The flip top on this Little Giant Plastic Flip-Top Poultry Feeder makes it extra easy to fill and clean. This plastic chicken feeder has a snap-in hinge to promote long-lasting use. There are 28 feeding holes in the chicken feeder for poultry to access. Miller Manufacturing Company products are warranted to the original purchaser to be free from defects in material and workmanship under normal use and service. Miller's obligations under this Warranty shall be limited to the repair or exchange of any part or parts which may thus prove defective under normal use and service within 30 days from the date of shipment by Miller to the original purchase, and which Miller's examination shall disclose to its satisfaction to be thus defective. Purchaser must deliver any part or parts to: Miller Manufacturing Company, 1450 West 13th Street, Glencoe, MN 55336 for examination. This Warranty does not apply to damage caused by misuse or neglect in the field, or failure to follow installation instructions.

73.    In connection with the ImPECKables Plastic Chicken Feeder Base, advertised and sold by TSC, TSC's website includes a Product Details section falsely and/or misleadingly

34

claiming that the non-Miller product advertised and sold by TSC is subject to Miller's warranty.

An excerpt from the Product Details section is stated below:

> Limited 1 Year Warranty. Miller Manufacturing Company products are warranted to the original purchaser to be free from defects in material and workmanship under normal use and service. Miller's obligations under this Warranty shall be limited to the repair or exchange of any part or parts which may thus prove defective under normal use and service within 30 days from the date of shipment by Miller to the original purchase, and which Miller's examination shall disclose to its satisfaction to be thus defective. Purchaser must deliver any part or parts to: Miller Manufacturing Company, 1450 West 13th Street, Glencoe, MN 55336 for examination. This Warranty does not apply to damage caused by misuse or neglect in the field, or failure to follow installation instructions.

74.    In connection with the ImPECKables 1 qt. Screw-On Poultry Jar advertised and sold by TSC, TSC's website includes a Product Details section falsely claiming that the non-Miller product advertised and sold by TSC is subject to Miller's warranty. The false and/or misleading warranty information is identical that which is listed in the Paragraph immediately above.

75.    In connection with the ImPECKables 1 qt. Screw-On Poultry Waterer Base advertised and sold by TSC, TSC's website includes a Product Details section falsely claiming that the non-Miller product advertised and sold by TSC is subject to Miller's warranty. The Product Details section is stated below:

> ImPECKables Screw-On Poultry Waterer Base combines with the ImPECKables 1-Quart Screw-On Feeder/Waterer Jar (Item No. 690, sold separately) to make a gravity-feed chicken waterer for baby chicks and small birds. 6 inch diameter by 1.5 inch high. Made of heavy-duty polystyrene. Limited 1 Year Warranty. Miller Manufacturing Company products are warranted to the original purchaser to be free from defects in material and workmanship under normal use and service. Miller's obligations under this Warranty shall be limited to the repair or exchange of any part or parts which may thus prove defective under normal use and service within 30 days from the date of shipment by Miller to the original purchase, and which Miller's examination shall disclose to its satisfaction to be thus defective. Purchaser must deliver any part or parts to: Miller Manufacturing Company, 1450 West 13th Street, Glencoe, MN 55336 for examination.

35

76.     Prior to selling the non-Miller, ImPECKables poultry feeder products shown above, TSC previously sold Miller's competing poultry feeder products (also shown above).

77.     Despite that TSC no longer sells Miller's poultry feeder products shown above, TSC has posted and maintained consumer reviews pertaining to Miller's poultry feeder products on its website in connection with its advertisements and sales of the non-Miller poultry feeder products. These consumer reviews, reviewing Miller's products or confusing Miller's products with the non-Miller products, demonstrate and create further confusion as to the source of the non-Miller product now sold by TSC and unfairly trade off the goodwill and reputation Miller has built in its LITTLE GIANT® poultry feeder products.

78.     Based on the conduct in the Paragraphs immediately above, TSC is trading off of Miller's brand, product development work, reputation and goodwill, and is intentionally creating confusion as to the source of the products at issue to divert sales. Again, Miller's reputation is harmed by this confusion, as are its sales.

79.     As described in several Paragraphs herein, at this time, Miller is aware of several instances wherein TSC advertises and/or sells non-Miller products but advertises Miller's warranty and other product information in connection with the non-Miller products. TSC employs this false and/or misleading advertising strategy in connection with at least the following products: AgraTronix Plastic Trough-O-Matic Float Valve, Retriever 52-Cup Ever-Full Galvanized Steel Outdoor Pet Water Bowl, ImPECKables 2.5 lb. Plastic Flip-Top Poultry Feeder, ImPECKables Plastic Chicken Feeder Base 1 qt, ImPECKables 1 qt. Screw-On Poultry Jar, and ImPECKables 1 qt. Screw-On Poultry Waterer Base.

80.     The misuse of Miller's warranty and other product information in the Product Details, Product Documents, and Specification sections of TSC's non-Miller product

advertisements and listings constitute false and/or misleading statements of fact by TSC in commercial advertisements about non-Miller products.

81.    The misstatements actually deceived and/or have a tendency to deceive a substantial segment of the target consumers. For example, at least one TSC customer, who purchased a non-Miller Retriever 52-Cup Ever-Full Galvanized Steel Outdoor Pet Water Bowl called Miller seeking to make of use of Miller's warranty, which TSC advertises in connection with the non-Miller product that it sold to the customer.

82.    The deception is material, in that it is likely to influence purchasing decisions, as consumers recognize and trust Miller's brand, products, and warranty information. This is evidenced, for example, by the customer described above, who sought to invoke Miller's warranty for the non-Miller product and more broadly by the source-recognition and reputation for quality that Miller's brands have garnered over many decades.

83.    TSC caused its false and/or misleading statements to enter interstate commerce by posting Miller's warranty information and other product information on its website in connection with its advertisements and sales of non-Miller products.

84.    Miller has been or is likely to be injured as a result of the false and/or misleading statements, both by direct diversion of sales from Miller to TSC and by a loss of goodwill associated with Miller's products. Miller's high quality products have been replaced on TSC's website by lesser quality competing products that divert sales from Miller and tarnish Miller's reputation, as consumers are confused regarding the source of the products, believing in some instances that they are genuine Miller products when in fact they are not.

**COUNT 1 (Federal Trademark Infringement)**

85.    Miller incorporates the allegations of all other Paragraphs herein.

86.     TSC's unauthorized use in commerce of the TROUGH-O-MATIC®, LITTLE GIANT®, CHOW HOUND, and PET LODGE® (or LODGE) marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of TSC's products, and is likely to cause consumers to believe, contrary to fact, that TSC's products are sold, authorized, endorsed, or sponsored by Miller, or that TSC is in some way affiliated with or sponsored by Miller in connection with the products at issue. TSC's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

87.     Upon information and belief, TSC has committed the foregoing acts of infringement with full knowledge of Miller's prior rights in the TROUGH-O-MATIC®, LITTLE GIANT®, CHOW HOUND, and PET LODGE® marks and with the willful intent to cause confusion and trade on Miller's goodwill.

88.     TSC's conduct is causing immediate and irreparable harm and injury to Miller, and to its goodwill and reputation, and will continue to both damage Miller and confuse the public unless enjoined by this Court. Miller has no adequate remedy at law.

89.     Miller is entitled to, among other relief, injunctive relief and an award of actual damages, TSC's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT 2 (Federal Unfair Competition and False/Misleading Advertising)

90.     Miller incorporates the allegations of all other Paragraphs herein.

91.     TSC's unauthorized use in commerce of Miller's Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of TSC's products and is likely to cause consumers to believe, contrary to fact, that TSC's products are sold, authorized,

endorsed, or sponsored by Miller, or that TSC is in some way affiliated with or sponsored by Miller in connection with the products at issue.

92.     TSC's unauthorized use in commerce of Miller's Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

93.     TSC's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of TSC with Miller in connection with the products at issue.

94.     As described herein, TSC falsely and/or misleadingly represents facts related to its non-Miller products to customers, potential customers, and members of the public. Such representations of fact, undertaken in commercial advertising or promotion, misrepresent the nature, characteristics, or qualities of Miller's and TSC's goods, services, and/or commercial activities and are false and misleading, in that, for example, contrary to TSC's representations, Miller's products are not being sold by TSC in such instances and the non-Miller products being sold by TSC are not subject to Miller's warranty or otherwise affiliated with Miller or Miller's Marks.

95.     TSC's representations actually deceive or are likely to deceive a substantial segment of its intended audience of potential customers and customers of the farm and pet supply products at issue, as well as the public.

96.     TSC's representations are material in its effects on the purchasing decisions of potential customers and customers of the farm and pet supply products at issue. These representations have influenced, and will continue to influence, purchasing decisions of such customers and potential customers.

97.     TSC has caused its false and/or misleading advertisements and representations to enter interstate commerce in that it provides its services nationwide and has published these false and/or misleading advertisements and representations online.

98.     TSC's false and misleading representations are acts of false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

99.     TSC's acts have been committed with intent to cause confusion and mistake, and with knowledge of their wrongful nature. TSC's false advertising and unfair trade practices are intentional and willful.

100.    As a direct and proximate result of TSC's actions, Miller has been and will continue to be severely injured in its business through lost sale, and otherwise, that would have been available to Miller had TSC accurately and truthfully represented the relevant warranty and product information (or lack thereof).

101.    In addition to the injury to Miller as a direct and proximate result of TSC's actions, the public has been and will continue to be harmed and negatively affected in that it has and continues to receive false and/or misleading information about Miller's products, TSC's products, and Miller's alleged affiliation with the latter.

102.    TSC's conduct as alleged herein is causing immediate and irreparable harm and injury to Miller, and to its goodwill and reputation, and will continue to both damage Miller and confuse the public unless enjoined by this court. Miller has no adequate remedy at law.

103.    Miller is entitled to, among other relief, injunctive relief and an award of actual damages, TSC's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT 3 (Patent Infringement)

104.    Miller incorporates the allegations of all other Paragraphs herein.

105.    TSC has been infringing the '067 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, infringing poultry watering devices, including those sold under the name ImPECKables Starter Poultry Kit and those sold under the name Flock Party Poultry Waterer Fountain, in violation of 35 U.S.C. § 271(a).

106.    TSC's infringement is knowing, intentional, and willful.

107.    TSC's acts of infringement of the '067 Patent have caused and will continue to cause Miller damages for which Miller is entitled to compensation pursuant to 35 U.S.C. §§ 284, 289.

108.    TSC's acts of infringement of '067 Patent have caused and will continue to cause Miller immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Miller has no adequate remedy at law.

109.    This case is exceptional and, therefore, Miller is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## COUNT 4 (Violation of Minnesota's Deceptive Trade Practices Act)

110.    Miller incorporates the allegations of all other Paragraphs herein.

111.    Through the false and/or misleading advertising, the posting and maintenance of consumer reviews of Miller products in connection with advertisements and sales of non-Miller products, and the unauthorized use of Miller's Marks and the '067 Patent, TSC has misrepresented that TSC's goods are of a particular standard, quality or grade, and that TSC's goods are of particular style or model, and TSC has passed off its goods as those of Miller's. This conduct has

41

caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of TSC's goods, all in violation of Minn. Stat. § 324D.44.

112.    By its deceptive trade practices, TSC has caused, and will continue to cause, injury and damage to Miller. TSC may continue in its unlawful acts to the irreparable damage and detriment of Miller unless enjoined by this court.

113.    TSC's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to its affiliation, connection, or association with Miller. Miller is entitled to its attorneys' fees and costs.

### COUNT 5 (Minnesota Common Law Unfair Competition)

114.    Miller incorporates the allegations of all other Paragraphs herein.

115.    TSC's false and/or misleading advertising and unauthorized use in commerce of Miller's Marks and the '067 Patent as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of TSC's goods, and is likely to cause consumers to believe, contrary to fact, that TSC's goods are sold, authorized, endorsed, or sponsored by Miller, or that TSC is in some way affiliated with or sponsored by Miller in connection with the products at issue.

116.    TSC's copying of Miller's product images as alleged herein is also likely to deceive consumers as to the origin, source, sponsorship, or affiliation of TSC's goods, and is likely to cause consumers to believe, contrary to fact, that TSC's goods are sold, authorized, endorsed, or sponsored by Miller, or that TSC is in some way affiliated with or sponsored by Miller in connection with the products at issue.

117.    TSC's posting and maintaining of customer reviews relating to Miller's products (which TSC once sold but no longer sells) in connection with advertisements and sales of non-Miller products is also likely to deceive consumers as to the origin, source, sponsorship, or

42

affiliation of TSC's goods, and is likely to cause consumers to believe, contrary to fact, that TSC's goods are sold, authorized, endorsed, or sponsored by Miller, or that TSC is in some way affiliated with or sponsored by Miller in connection with the products at issue.

118.    TSC's conduct as alleged above is willful and is intended to and is likely to cause confusion, mistake, or deception as to its affiliation, connection, or association with Miller.

119.    TSC's conduct as alleged above constitutes unfair competition in violation of Minnesota common law.

120.    TSC's unfair competition as alleged above is causing immediate and irreparable harm and injury to Miller, and to its goodwill and reputation, and will continue to both damage Miller and confuse the public unless enjoined by this court. Miller has no adequate remedy at law.

## JURY TRIAL DEMANDED

121.    Miller hereby requests a trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE Miller requests judgment as follows:

1.    Adjudging that TSC has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

2.    Adjudging that TSC has infringed the '067 Patent, in violation of 35 U.S.C. § 271.

3.    Adjudging that TSC has violated Minnesota's Deceptive Trade Practices Act.

4.    Adjudging that TSC has violated Minnesota common law through its trademark infringement and unfair competition.

5.    Granting an injunction permanently enjoining TSC, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing

to the infringement of, or inducing infringement of the '067 Patent, including by making, using, selling, offering for sale in the United States, or importing into the United States the TSC Watering Devices.

6.    Granting an injunction permanently enjoining the TSC, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a.    manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise, or promote float valves and/or automatic dog feeders bearing the Miller's Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Miller's Marks, including any use of TROUGH-O-MATIC, PET LODGE, LITTLE GIANT, and/or CHOW HOUND, registered or unregistered, in connection with non-Miller float valves, portable kennels, and/or automatic dog feeders, respectively;

b. engaging in any activity that infringes Miller's rights in Miller's Marks;

c. engaging in any activity constituting unfair competition with Miller;

d. engaging in any activity that is likely to dilute the distinctiveness of Miller's Marks;

e. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) TSC's products at issue in this lawsuit are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Miller without Miller's approval, or (ii)

Miller's products at issue in this lawsuit are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with TSC;

f. using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Miller or tend to do so;

g. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating Miller's Marks or any other mark that infringes or is likely to be confused with Miller's Marks, or any goods or services of Miller, or Miller as their source; and

h. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

7.    Granting such other and further relief as the Court may deem proper to prevent the public from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by TSC at issue in this lawsuit are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Miller or constitute or are connected with Miller's float valves and/or automatic dog feeders.

8.    Directing TSC to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating Miller's Marks or any other mark that is a

45

counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Miller's Marks, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale TSC's goods or services to cease the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing Miller's Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Miller's Marks, and to immediately remove them from public access and view.

9.      Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), TSC to file with the court and serve upon Miller's counsel within thirty (30) days after service on TSC of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which TSC has complied therewith.

10.     Ordering TSC to account and pay damages adequate to compensate Miller for TSC's infringement of the '067 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284.

11.     Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales.

12.     Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284.

13.     Awarding Miller TSC's total profits pursuant to 35 U.S.C. § 289.

14.      Declaring this case exceptional and awarding Miller its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285.

15.     Awarding Miller an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

16.     Directing that TSC account to and pay over to Miller all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Miller for the damages caused thereby.

17.     Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

18.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Miller its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

19.     Awarding Miller interest, including prejudgment and post-judgment interest, on the foregoing sums.

20.     Awarding such other and further relief as the Court deems just and proper.

174534327v17

Respectfully submitted,

Dated: July 31, 2025                    **Taft Stettinius & Hollister LLP**

*/s/ Kristine M. Boylan*
Kristine M. Boylan (MN #0284634)
Hannah S. Fereshtehkhou (MN #0404002)
Taft Stettinius & Hollister LLP
2200 IDS Center 80 South 8th Street
Minneapolis, MN 55402
(612) 977-8400
kboylan@taftlaw.com
HFereshtehkhou@taftlaw.com

W. Michael Etienne (MN Bar #0505877)
Taft Stettinius & Hollister LLP
1 Indiana Sq., Suite 3500
Indianapolis, Indiana 46204
(317) 713-3500
metienne@taftlaw.com

***Attorneys for Plaintiff Miller Manufacturing Company***