## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Miller Manufacturing Company,

      Plaintiff-Counter Defendant,

v.

Tractor Supply Company,

      Defendant-Counter Claimant.

Civil No. 25-3099 (DWF/DLM)

**MEMORANDUM
OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on Plaintiff Miller Manufacturing Company's

("Miller") motion for a preliminary injunction.[1]  (Doc. No. 40.)  Defendant Tractor

Supply Company ("TSC") opposes the motion.  (Doc. No. 47.)  For the reasons set forth

below, the Court denies the motion as moot.

## BACKGROUND

Miller designs, manufactures, and sells farm, ranch, and pet products.  (Doc. No. 1

("Compl.") ¶ 5.)  TSC is a retailer of farm and pet supply products.  (*Id.* ¶ 6.)  TSC sells

products in both brick-and-mortar stores and on its website; its website lists roughly

---

[1]    The docket reflects a motion for temporary restraining order, but Miller acknowledges that it seeks a motion for preliminary injunction.  (*See* Doc. No. 42 at 2.) Regardless, a motion for a temporary restraining order is analyzed under the same framework as a motion for preliminary injunction.  *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022).

349,000 distinct products.  (Doc. No. 48-1 ¶ 6.)  TSC and Miller have worked together, and TCS has sold Miller products for years.  (Compl. ¶ 6.)

Miller owns various trademarks, including trademarks that are registered on the Principal Register in the United States Patent and Trademark Office ("USPTO") for TROUGH-O-MATIC®, LITTLE GIANT®, and PET LODGE®.  (*Id.* ¶¶ 8-10, 13-16; Doc. Nos. 43-1, 43-2, 43-15.)  TROUGH-O-MATIC® is used in connection with "automatic float valves, made of plastic and metal, for stock tanks, troughs, barrels, and pans"; PET LODGE® is used in connection with "portable kennels" and "automated pet appliances, namely, feeders and waterers"; and LITTLE GIANT® is used in connection with "bowl-type poultry, stock and pet waterers with automatic water level controls" and "stock tanks, namely, troughs for holding livestock feed or water."  (Compl. ¶¶ 8, 14-15; Doc. No. 43-14 at 2.)

In 2024, Miller discovered that TSC was using Miller's product images, trademarks, and associated warranties in connection with the sale of non-Miller products. For example, on November 13, 2024, Miller received a complaint from a customer who had sought to buy a Miller float valve but instead received an AgraTronix[2] float valve. (Doc. No. 43-7.)  That same day, Miller emailed TSC asking that Miller's product images be removed from TSC's website.  (Compl. ¶ 26; Doc. No. 43-7; Doc. No. 48-1 ¶ 12.)  On November 21, 2024, TSC took down the offending webpage.  (Doc. No. 48-1 ¶ 12.)  TSC notes that the email did not mention any trademark or alleged trademark violation.  (*Id.*)

---

[2]     AgraTronix is a third-party vendor to TSC.  (Doc. No. 48-1 ¶ 5.)

In February 2025, the webpage was reactivated.  (*Id.*)  TSC submits that an employee new to their position at TSC reposted the webpage not knowing that it had been taken down intentionally.  (*Id.*)

In July 2025, Miller discovered reposted webpages advertising non-Miller products using Miller images and warranties.  (Doc. Nos. 43-8, 43-10, 43-11.)  On July 31, 2025, Miller filed this lawsuit and, shortly thereafter, filed a motion for preliminary injunction.  (Doc. Nos. 1, 9.)  TSC claims that it was unaware of any trademark concerns by Miller until it received copies of the complaint and motion for preliminary injunction.  (Doc. No. 47 at 6; Doc. No. 48-1 ¶ 13.)  TSC responded to this lawsuit and asserted affirmative defenses and counterclaims.  (Doc. No. 28.)

In this action, Miller asserts claims for trademark infringement, misleading advertising, patent infringement, deceptive trade practices, and unfair competition.  (Compl. ¶¶ 85-120.)  Miller's claims for trademark infringement and false advertising relate to eight TSC products, each with a Stock Keeping Unit number ("SKU"):  (1) three AgraTronix float valves ; (2) one Retriever outdoor pet water bowl; and (3) four ImPECKables products.[3]  (*See* Doc. No. 47 at 6.)

On October 30, 2025, the parties stipulated to stay this action pending mediation.  (Doc. No. 30.)  The parties further stipulated that TSC would take down "all of the webpages advertising the accused products that are the subject of Miller's Motion for Preliminary Injunction" and that Miller, in turn, would withdraw its motion.  (*Id.* ¶ 7.)

---

[3]    Retriever and ImPECKables are TSC-owned trademarks.  (Doc. No. 48-1 ¶ 5.)

TSC further agreed that it would not repost the webpages at issue until providing them to and receiving approval from Miller (provided such approval is not "unreasonably denied or delayed") or receiving the Court's approval. (*Id.*)

On February 17, 2026, the parties participated in mediation, but no settlement agreement was reached. (Doc. No. 37.) The Court lifted the stay and set a pretrial conference. (Doc. No. 39.) On February 2, 2026, TSC sent revised webpages to Miller for its approval, including a revised version of pages advertising AgraTronix float valves. (Doc. No. 48 ¶ 2; Doc. No. 43 ¶ 19.) Miller did not approve or otherwise respond to the revised versions. (Doc. No. 43 ¶ 19.) Instead, Miller claims that the issue was subsumed in the wider settlement negotiations. (*Id.*)

On March 4, 2026, Miller discovered that TSC posted three webpages advertising the AgraTronix float valve using Miller content—specifically by making available for download Miller's user manuals for LITTLE GIANT® products and using a marketing video that used the LITTLE GIANT® mark in connection with the promotion of non-Miller products. (Doc. No. 43 ¶¶ 20-25.)

TSC asserts that on March 10, 2026, independently of Miller's discovery, it learned from a third party that the AgraTronix webpages using Miller content had been republished. (Doc. No. 48-1 ¶ 17.)[4] TSC maintains that the republication was inadvertent. (*Id.*) Within hours of the discovery, TSC removed all Miller content, and

---

[4]     TSC asserts that Miller never reached out to TSC about Miller's discovery of the republication of these advertisements.

the webpages were taken down entirely by March 13, 2026.  (*Id.*)  TSC further asserts that it has implemented additional safeguards to prevent the republishing of Miller content, including the deactivation of the SKUs associated with the products at issue, disabling automated website publishing functions, and requiring that TSC's legal department be contacted before any content related to these products go live.  (*Id.* ¶ 18.)[5]

On March 18, 2026, Miller brought a renewed motion for preliminary injunction. (Doc. No. 40.)  The Court considers the motion below.

## DISCUSSION

The Court considers four factors in determining whether to grant a preliminary injunction:  (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction would inflict on the non-moving party; (3) the moving party's likelihood of success on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.*  A preliminary injunction is an "extraordinary remedy," and the moving party bears the burden of establishing the need for a preliminary injunction.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

---

[5]     TSC submits that it has since determined that when it sourced products from new vendors to replace Miller products, it reused SKUs, which in turn caused Miller content to be included automatically.  (Doc. No. 48-1 ¶ 9.)

The Court begins and ends with the consideration of whether this motion is moot and, therefore, whether Miller can demonstrate the threat of irreparable harm. A party is irreparably harmed when it does not have an adequate legal remedy at law, usually because damages will not provide full compensation. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). TSC argues that Miller cannot show irreparable harm because it has ceased all allegedly infringing activity and the injunction is moot.

The motion is focused on TSC's reposting of three product webpages advertising the AgraTronix float valve. Specifically, Miller seeks injunctive relief prohibiting TSC's use of these webpages and, more generally, prohibiting TSC from using any advertisement with Miller's relevant trademarks or warranties. There is no dispute that TSC agreed to remove Miller content from its webpages and, in large part, has done so. In fact, the webpages for the seven other accused products in this case have remained offline since September 2025. (Doc. No. 48-1 ¶ 17.) However, as detailed above, it is undisputed that TSC did repost webpages with Miller content two times after it originally removed content in November 2024. TSC claims that the reposting of webpages with Miller content was inadvertent and promptly corrected when discovered. For example, TSC submits evidence that the reposting of Miller content in February 2025 was done by an employee new to their position and without knowledge that the content had been intentionally removed in November 2024. (*Id.* ¶ 12.) Similarly, as to the most recent

6

incident of the posting of Miller content in the float valve advertisements, TSC submits that it is continuing to investigate but believes "with certainty" that it was due to an internal error. (*Id.* ¶ 17.) Notably, TSC learned of the reposted webpages before Miller filed the present motion and removed the content within hours of discovery. (*Id.*) Further, TSC removed the webpages entirely on March 13, 2026, five days before Miller filed the present motion. (*Id.*) TSC also submits evidence of steps it has taken and safeguards it has added to prevent future mistakes in reposting. These include the deactivation of the SKUs associated with the products at issue, disabling automated website publishing functions, and requiring the involvement of TSC's legal department before posting any content pertaining to the relevant products. (*Id.* ¶ 18.)

Miller maintains that the motion is not moot. Miller points to the incidents of alleged infringement and argues that it is reasonable to expect that the challenged conduct will occur again. The Court is sympathetic to Miller's arguments but still finds that, on the record before it, the challenged conduct is not likely to continue. Indeed, TSC's removal of the websites and advertisements at issue has not been seamless, but the evidence falls short of demonstrating any wrongful intent or a likelihood that more postings containing Miller content will occur. Instead, the Court is persuaded that TSC's reposting of Miller content was done inadvertently and, importantly, was quickly corrected when discovered.

The Court acknowledges that a trademark infringement claim is not mooted just because a defendant stops using a mark. *See Snap Fitness, Inc. v. Scenic City Fitness, Inc.*, No. 24-cv-2803, 2024 WL 4528877, *6, *8 (D. Minn. Oct. 18, 2024) (considering

7

the issue of mootness in the context of the likelihood of success of a trademark claim and granting a preliminary injunction). In *Snap Fitness*, the court cited to *Rainforest Cafe, Inc. v. Amazon, Inc.*, 86 F. Supp. 2d 866 (D. Minn. 1999), on the issue of mootness. 2024 WL 4528877, at *6. In *Rainforest Cafe*, on summary judgment the court considered whether trademark claims were moot after an alleged infringer stopped using the mark on its menu. 86 F. Supp. 2d at 905. The court held that the cessation of infringing use did not moot the claim, explaining that the elimination of the offending mark did not negate damages for past infringement. *Id.* Importantly, however, the court recognized the relevance of a defendant's voluntary cessation in the context of injunctive relief. *Id.*; *see also Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016 (2000) (recognizing that a defendant's voluntary cessation "is an important factor bearing on the question of whether a court should exercise its power to enjoin defendant" (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982))).

Here, TSC does not argue that Miller's trademark claims are moot. The merits of these claims will be determined at a later stage in this litigation. Instead, the inquiry here centers on whether Miller's request for injunctive relief is moot considering that TSC has stopped the allegedly infringing conduct. In *Surdyk's*, the Court granted an injunction where the defendant had "given no indication to the court that it intends to halt or modify its past advertising practices." *Id.* at 1020. Here, the facts are significantly different. As discussed, TSC has taken down the offending webpages and has stated that it will not reactivate the accused webpages until either Plaintiff, or the Court, approves them. These

8

assurances, coupled with TSC's efforts to take down the webpages, distinguish this case from those cases finding that voluntary cessation did not moot injunctive relief. [6]

For the reasons discussed above, the Court finds that Miller's motion for a preliminary injunction is moot.

## CONCLUSION

While the Court denies Miller's motion for preliminary injunctive relief, the Court highlights TSC's representation that it intends to implement safeguards to ensure that no further reposting of Miller content will occur.  Of course, any future claim of inadvertence will carry far less weight should a reposting with Miller content occur in the future.

## ORDER

Based on the foregoing and the record in this case, **IT IS HEREBY ORDERED** that Miller's motion for preliminary injunction (Doc. No. [40]) is **DENIED AS MOOT**.

Dated:  April 7, 2026                     s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge

---

[6]      Miller also relies on *DF Inst., Inc. v. Marketshare Eds*, No. 07-cv-1348, 2007 WL 1589525 (D. Minn. June 1, 2007).  In that case, the court found a threat of irreparable harm and granted preliminary injunctive relief in a copyright case where "since the inception of [the] lawsuit, [the defendant] ha[d] created more allegedly infringing materials." *Id.* at *8.  Importantly, the defendant in *DF Institute* admitted that even after changing its contested materials, the materials continued to contain allegedly-infringing content. *Id.* There has been no such admission here.  Instead, TSC asserts that it has taken down all allegedly-infringing content.